## Kaestner & Company, Defendant in Error, v. Charles Pope, Plaintiff in Error.

### Gen. No. 14,743.

MUNICIPAL COURT—*section 33 of act construed.* This section only applies to those persons specifically defined thereby.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. McKENZIE CLELAND, Judge, presiding. Heard in this court at the October term, 1908. Affirmed. Opinion filed December 6, 1909.

ditions to the elevator. Defendant paid plaintiff for all of the work done in 1905, and the transactions of that year are only material in so far as they relate to or affect the transactions of the previous year.

MATHER & HUTSON, for plaintiff in error.

ELBERT C. FERGUSON, for defendant in error.

MR. JUSTICE BAKER delivered the opinion of the court.

We think that from the evidence the jury might properly find that the reasonable value of the labor done and materials furnished by plaintiff to defendant stated in the bills of June 21 and August 4, 1904, was equal to the amount of the verdict and judgment.

Plaintiff in error contends that the only just conclusion that can be drawn from the evidence is, that said bills were paid in connection with or as a part of the transactions between the parties in 1905. Plaintiff called as a witness Hodgkins, who, as the architect of defendant, had charge of the alterations made in defendant's building in 1905, and stated that he called him under the statute. Section 33 of the Municipal Court Act only provides that a party in interest and certain officers and the managing agent of a corporation may be examined by the adverse party. Hodgkins was neither a party in interest nor the agent of a corporation, and cannot therefore be held to have been called under the statute, but must be held to be a witness called by the plaintiff. While plaintiff might not therefore impeach Hodgkins, it might contradict him by other evidence.

Hodgkins testified that in February, 1905, he applied to plaintiff to extend the elevators; that his talk was with Mr. Snowden; that Snowden said that plaintiff had bills against defendant which were unpaid, and would "refuse to do any work for Mr. Pope on that building until these bills were settled;" that he finally told Snowden that if plaintiff would proceed

with the work he "would see that all accounts were squared up in a satisfactory manner to both parties." The compensation agreed on was seventy-five cents per hour for mechanics, fifty for helpers, materials at cost and ten per cent additional. Hodgkins issued to plaintiff two certificates on account of the extension of the elevators, one for $1,000 May 5, 1905, the other, a final certificate, for $708.91 July 27, 1905, and both were paid by defendant to plaintiff. Before said certificates were issued plaintiff had delivered to Hodgkins bills for labor and materials used and employed in such extension exceeding the aggregate amount of said certificates. Said final certificate is as follows:

"Bldg. No.................
Certificate No. 27.
By day $1708.91/100
Extra Work $.....................
Total, $1708.91/100
F o r m e r   Certificates
$1000.00/100
P r e s e n t   Certificate
$708.91/100
Total $1708.91/100
Balance $   None

$708 and 91/100
Chicago July 27 1905
To Mr. Charles Pope, 110 LaSalle St.
THIS IS TO CERTIFY, That Kaestner & Co., Contractor for the elevator work of addition of your building at Nos. 121-127 Plymouth Ct. City is entitled to a final payment of Seven Hundred Eight and 91/100 Dollars by the terms of contract in full.
HOWARD G. HODGKINS,
Architect."

Hodgkins further testified that the old or unsettled bills claimed by plaintiff to be due from defendant were taken into consideration in the adjustment of 1905, and an allowance made therefor to plaintiff, which was included in the final certificate; that to the best of his recollection $100, $108, $125, or something like that was included to cover such old bills. He further testified that Sollitt was the original contractor for the construction of the building and plaintiff was subcontractor for the elevators. Snowden testi-

fied that his conversation with Hodgkins was about another bill for $50.50 for the services of an operator to elevate material and assist tenants in moving, which Hodgkins insisted should be paid by Sollitt. Defendant put in evidence the following letter from plaintiff to Hodgkins dated March 23, 1905: "Complying with your valued favor of the 22d, we have entered your order for the change on the Pope Building Elevators, as per our proposition of the 11th, it being understood that our former bill is to be included with bills for this work as arranged by you and our Mr. Snowden." Also another letter from plaintiff to Hodgkins, dated July 25, 1905, which begins as follows: "Referring to our charge for time and material on the Pope building and which shows a balance due us of $738.09, we beg to state" that unless a certificate for that amount is issued a lien will be filed, etc. Also another letter from plaintiff to Hodgkins, dated July 26, 1905, which begins as follows: "For purpose of settlement of your account with us for the elevators erected in the Pope building we have decided to accept your figure made to our representative today of $708.91," etc. September 20, 1905, plaintiff sent defendant a statement of account, claiming a balance due from defendant of $309.75. This balance was made up of the following items:

| | |
|---|---|
| June 21, 1904, | $177.70. |
| Aug. 4, | 80.40. |
| July 25, 1905, | 51.65 |
| | 309.75. |

Defendant testified that Wilson had charge of the building in question with authority to make repairs and conduct correspondence for him, and that he did not personally attend to repairs or the management of the building. November 25, 1905, Wilson, in the name of defendant, wrote plaintiff as follows:

"In reply to your letter of the 22nd, I do not see why you persist in writing about this amount. I have told you several times that if you would send in a cor-

rected bill that I would mail you a check. The first two items in your statement, $177.70 and $80.40, I do not consider I am liable for, and that it is up to R. and S. Sollitt Co. to pay. The last item, July 25th, $51.65, you agreed to do for $45.00, and if you will send me a corrected bill for this amount, I will send you a check.                Yours truly,

CHAS. POPE,

Per Wilson."

The last item of $51.65 was afterwards adjusted and paid. The first two items are the bills sued for in this action.

The claim of defendant in November, 1905, was that these bills should be paid by Sollitt. This claim he abandoned at the trial and claimed that these bills were included in the final certificate of July 27, 1905, which he paid. The burden of proving payment was on the defendant. The defense of payment is supported only by the testimony of Hodgkins, who was called as a witness by plaintiff. His testimony as to a verbal agreement with Snowden that the bills of June 21 and August 4, 1904, should be included in the certificate for the new work was contradicted by Snowden. It finds no support in the certificate he issued for the new work or in the correspondence between him and plaintiff in reference to that certificate. If the bills were paid in July, it is remarkable that in November, when they were again presented by plaintiff to defendant, that defendant should not have said that they had been paid instead of saying that he was not liable for them and that it was up to the Sollitts to pay them.

We cannot, on the evidence in this record, say that the jury might not properly find against the defendant on his claim that the bills sued for had been paid. Finding in the record no reversible error, the judgment is affirmed.

*Affirmed.*